UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 20-063-DCR |
| V. | ) ) | |
| DOUGLAS WILLIAM VANCE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Douglas Vance faces conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering charges relating to a scheme that he and Co-Defendant Molly McKinnon allegedly hatched to defraud investors and lenders to his companies, Nex-Gen Industries, Inc. and NexGen Energy Partners, LLC. [*See* Record No. 1] These entities were "in the business of producing 'bio-char,' 'calcinated bituminous coal,' and related/similar products in the renewable-based carbon product sector." [*Id.* at ¶¶ 4-5.] Trial is scheduled to begin on May 31, 2022.

Vance was released pending trial under conditions set forth in a July 21, 2020, Order entered by United States Magistrate Judge Matthew A. Stinnett. [Record No. 18] One of those conditions is that the defendant "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, except through counsel." [*Id.* at ¶ 7(g).] The United States filed a motion requesting a hearing on an alleged violation of this condition on May 16, 2022. [Record No. 82]

The government represents in its motion that it learned on May 12, 2022, that the defendant had been in contact with a potential witness and victim, Wendell Elza, up to and including May 11, 2022. [*Id.* at p. 1.] "The communications involved, among other things, potential and ongoing business opportunities in the coal industry involving the Defendant and/or Mr. Elza." [*Id.*] The government argues that Elza qualifies as "a person who may be a victim or witness" because he is "an individual who is the subject of multiple FBI 302s in this investigation – which reports were long ago provided in discovery – and who has lost a substantial sum of money to the Defendant." [*Id.* at pp. 2-3.] The Court held an evidentiary hearing on the government's motion on May 25, 2022, pursuant to 18 U.S.C. § 3148.

**I.**

During the hearing, Elza, a coal broker, testified that he had phone and text exchanges with the defendant nearly every weekday for a period of four to five years up to around May 12, 2022, when he met with the United States to prepare for trial. Elza stated that he had previously paid Vance an estimated $300,000.00 to $400,000.00, with approximately $200,000.00 to $300,000.00 of that amount comprising loans to the defendant. He recounted that the phone and text contact generally involved Vance passing along information about potential customers for Elza, which effectively functioned as a way for the defendant to pay a portion of the loans from Elza. Elza ultimately agreed that it would be difficult for Vance to completely repay these loans if he were to be convicted in this case.

Elza further stated that he had no complaints about the contact and that Vance did not discuss the upcoming trial or otherwise threaten or try to influence his potential testimony. Additionally, Elza indicated that he had heard of C6 Corporation, a carbon product business operated by Vance that the defendant includes in his email address.

Federal Bureau of Investigation ("FBI") Special Agent Christopher Hubbuch provided additional testimony during the hearing. According to Special Agent Hubbuch, Elza was the subject of multiple interviews during the investigation of this case and that these interview summaries are documented in FBI Form FD-302 reports. These reports were provided to the defense much earlier in the case. Special Agent Hubbuch also took photographs of a portion of call records and texts from Elza's phone dating back to January 2022. This information documents the witness' extensive contact with Vance during the period following release conditions imposed by the Magistrate Judge. These photographs were admitted as United States Exhibits A, B, C, D, and E during the hearing. Notably, some of the texts were from January 23, 2022, and January 24, 2022, *i.e.*, the days immediately preceding the January 25, 2022, pretrial conference held in this matter. Special Agent Hubbuch also testified that he had reviewed C6's website, which was active as of May 23 or May 24, 2022.

The government argued that clear and convincing evidence demonstrates that the defendant violated Condition 7(g) of the Magistrate Judge's July 21, 2020, Order. In doing so, the United States proffered that the FBI Form FD-302 reports were provided to the defense on January 27, 2021, and asserted that the evidence showed that Vance had frequent contact with the defendant after that time. The United States also clarified that one of Elza's companies, Aces High Coal Sales, Inc., was listed as a victim in a spreadsheet chart intended to be an exhibit at trial.

Additionally, the government noted a representation made by the defendant during the pretrial conference that he had been working as a welder while on release and pending trial. This representation does not appear to be entirely truthful, given the nature of Vance's contacts with Elza and C6's continued existence. Based on the evidence presented and these prior

representations, the United States asserts that Vance is unlikely to abide by any condition or combination of conditions of release, which warrants detention.

Vance posits that Elza's involvement in this case is minimal and that the substance of FBI Form FD-302 reports is innocuous. Through counsel, he further contends that the reports do not necessarily indicate that Elza would be a witness at trial and that a prior proposed plea agreement tendered by the government did not include Elza as a victim. The defendant likewise argues that his debts to Elza do not amount to fraud such that the witness would be a victim as alleged by the government. Vance reaffirms that he has been working as a welder and indicates that he has not made a significant amount of money from C6 during this proceeding.

## II.

The defendant has been released on specific, enumerated conditions pending trial pursuant to 18 U.S.C. § 3142(c). "A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). "The attorney for the Government may," as in this case, "initiate a proceeding for revocation of an order of release by filing a motion with the district court." 18 U.S.C. § 3148(b). The judicial officer who presides over the revocation proceeding "shall enter an order of revocation and detention if, after a hearing," the officer:

> (1) finds that there is . . . (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
> (2) finds that . . . (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or

the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b)(1)-(2).

Thus, while "[t]he United States must prove that a release violation occurred," there are "differing burdens of proof based on the nature of violation alleged." *United States v. Jones*, No. 6: 09–16–DCR, 2009 WL 1360672, at *2 (E.D. Ky. May 12, 2009). Probable cause applies for alleged criminal violations, while clear and convincing evidence applies for any other alleged violation. *Id.*

Moreover, as the statute indicates, "[a] finding that the defendant violated a release condition does not alone permit revocation." *United States v. Wilks*, 15 F.4th 842, 848 (7th Cir. 2021). Instead, "the judge must make findings under both § 3148(b)(1) and (b)(2) before he may revoke release." *Id.* Finally, § 3148(c) provides that "[t]he judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release."

### III.

The government concedes that the clear and convincing evidence standard applies under § 3148(b)(1)(B). And the evidence indicates that it has carried its burden of establishing violations of release conditions by Vance.

Condition 7(g) notably precludes "all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation *or* prosecution, except through counsel." [Record No. 18, ¶ 7(g) (emphasis added).] Vance disputes the import of Elza's forthcoming testimony and whether he should have known that Elza could be a potential witness at trial or a victim. But the defendant does not contest the facts that: (1) Elza was

interviewed as a witness during the *investigation* relating to this case; (2) his interviews were documented in FBI Form FD-302 reports disclosed to him; and (3) he had frequent contact with the witness, despite the fact that he was aware of these interviews. Because the relevant condition of release encompasses the case's investigation, in addition to its prosecution, the Court finds that there is clear and convincing evidence that Vance committed numerous violations under § 3148(b)(1)(B).

Turning to § 3148(b)(2), the government asserts that Vance is unlikely to abide by any condition or combination of conditions of release under subsection (b)(2)(B). In doing so, it contends that: (1) the evidence demonstrates a blatant disregard for Condition 7(g)'s prohibition on contacting witnesses; and (2) Vance misled the Court when he indicated during the pretrial conference that he was working as a welder (as opposed to soliciting or seeking other business opportunities similar to those involving Nex-Gen).

Vance's pretrial conference representation is concerning. He may have been working as a welder, but the communications with Elza and his C6 activities indicate a continued involvement in the industry at issue in this case. Another relevant area of concern the Court probed during the hearing is whether the defendant has attempted to indirectly influence Elza's potential testimony at trial, not by directly threatening the witness or even speaking about this case, but by maintaining his general business connection with the witness and providing him with information regarding potential customers. Such conduct certainly could influence the witness' testimony because Vance's ability to repay Elza's loans would be significantly diminished if he is convicted and the profitable information he has already provided may itself induce more favorable (but misleading or inaccurate) testimony.

Although mindful of these issues, the Court does not find that the second prong of the § 3148(b) analysis is satisfied to the extent of requiring total revocation of conditions of release. Instead, the Court will impose additional, more restrictive conditions of release set forth below and announced during the hearing. *See Jones*, 2009 WL 1360672, at *4-5. These conditions are tailored to safeguard against any further attempts by the defendant to contact potential witnesses and/or victims in this case. Finally, the Court reserves ruling on whether the defendant's representation during the pretrial conference warrants a contempt proceeding under 18 U.S.C. §§ 401 and 3148(c) when viewed in the context of the evidence presented during the May 25, 2022 hearing.

Accordingly, it is hereby

**ORDERED** that Defendant Douglas Vance's conditions of release, initially set forth in the July 21, 2020, Order entered by United States Magistrate Judge Matthew A. Stinnett [Record No. 18], are **AMENDED** as follows:

1. Except as outlined in paragraph 1A below, the defendant shall be placed on home detention at his home. The defendant may leave his home (defined as the house or apartment building in which the defendant presently resides and an area within 50 feet of that house or apartment building) only for medical treatment for himself or his wife, meetings with his counsel if notice is given in advance to his supervising United States Probation Officer, and for court appearances and trial. Other than emergency medical situations involving the defendant or his wife or the conditions outlined herein, the defendant must receive prior approval from his supervising United States Probation Officer before leaving his home for any other reason. The defendant's home detention condition shall be monitored electronically.

      1A.    To allow adequate and continuing preparation and participation in the upcoming trial of this matter, the defendant will be allowed to travel to and from and reside at a hotel/motel in the Lexington, Kentucky, area immediately before (defined as 48 hours in advance of the beginning of trial) and during the course of trial. The specific location of the hotel/motel must be provided in advance to the supervising United States Probation Officer and the conditions outlined in paragraphs 1, 2, 3, 4, and 5 of this Order apply equally to that location.

      2.    The defendant may not have any direct or indirect contact with any person (except through or in the presence of his counsel) that in any way includes, involves, concerns, mentions, or discusses the subject matter of this case. The term "subject matter of this case" means any of the charges or allegations in the indictment, any past or prospective business opportunities in the coal industry, any reference to or mention of persons that are, were, or may have been involved in the coal industry, any discussion of defenses, and any other matters that fairly relate in any way to the prosecution of Lexington Criminal Action No. 5: 20-063, including the names of persons who may be witnesses in the case. Thus, except through counsel or in a situation with counsel is physically present, the defendant may not discuss the subject matter of this case with any person.

      3.    The defendant may not receive visitors at his home (as defined above) or the location described in paragraph 1A above except for clergy, his attorney, United States Probation Officers, immediate and extended family members (defined as: Heather Vance (wife), Bradley Vance (brother), Nancy Vance (mother), Zac Houchens (step-son), Lisa Hannell, and Xander Vance (son)), and persons giving him or a family member medical care or treatment. However, with the exception of the defendant's wife, other immediate family

members including those listed above will be precluded from visitation if the person is expected to be a witness in the trial of this matter. The defendant shall be required to maintain a log of all visitors which shall include the time and duration of all visits. This log shall be made available to the Court and to the United States Probation Office upon request.

4. The defendant may not use any telephone, cell phone, computer, or other communication device to communicate with any person (other than regarding medical care) except to contact the United States Probation Office, clergy, defendant's counsel, and the defendant's immediate family or extended family (defined above and subject to all other restrictions imposed by this order). However, any calls placed by or on behalf of the defendant or received by or on behalf of the defendant shall be recorded on the log of visitors discussed in paragraph 3 above.

5. Except as modified by this Order, the terms and conditions originally imposed by the Magistrate Judge shall remain in effect.

Dated: May 25, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky